UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE ALVARAN, *on behalf of himself and all others similarly situated,*<br><br>                              *Plaintiffs*,<br><br>       -against-<br><br>SHERWIN-WILLIAMS INTERNATIONAL COMPANY,<br><br>                              *Defendant*. | **RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff George Alvaran ("Plaintiff Alvaran" or "Plaintiff"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), brings this action against defendant Sherwin-Williams International Company ("Defendant" or "Sherwin-Williams") as follows:

1. Plaintiff and the proposed class worked as Warehouse Managers, Lead Warehousers, Customer Service Associates and Sales Associates located throughout the State of New York, performing physical labor, and being paid bi-weekly.

2. Defendant's bi-weekly payment of Plaintiff and other similarly situated manual workers is in violation of NYLL § 191(1)(a) which requires weekly payment of Manual Workers.

3. Defendant's late wage payments deprived Plaintiff of the time-value of his earned wages, impairing his ability to save, invest, and utilize his wages in a timely manner as well as disrupting the payment of monthly expenses.

**THE PARTIES**

4. George Alvaran is an adult individual who is a resident of Orange County in the State of New York.

5. Plaintiff Alvaran worked for Defendant from October 2013 until the end of his employment on July 25th, 2022.

1

6. Defendant is a foreign business corporation organized and existing under the laws of Delaware.

7. Defendant has a principal place of business located at 101 Prospect Avenue Northwest, Cleveland, Ohio 44115 and a service of process address in the care of CT Corporation System at 1633 Broadway, New York, New York, 10019.

8. Defendant was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiff and all other similarly situated employees.

9. Defendant has maintained control, oversight, and direction over Plaintiff and all other similar employees, including timekeeping, payroll, and other employment practices that applied to them.

10. Defendant applies the same employment policies, practices, and procedures to all Manual Workers in its operation, including policies, practices, and procedures with respect to frequency of payment of wages.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiffs and the members of the proposed class are citizens of states different from that of Defendant.

12. This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the opposing parties since the Plaintiffs reside in New York State and are citizens of that state while Defendant Sherwin-Williams International Company is a citizen of Delaware, with its principal place of

business located at 101 Prospect Avenue Northwest, Cleveland, Ohio 44115.

13. There are over 200 members in the proposed class.

14. Defendant is subject to personal jurisdiction in New York as it does business in New York.

15. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

**FACTS**

16. Each Sherwin-Williams store that sells to retail customers employs Sales Associates and Customer Service Associates, as well and other employees with yet-to-be determined titles, who interact with customers and perform physical tasks such as mixing paint, stocking shelves, receiving and unloading trucks, and performing general cleaning tasks, all of whom perform physical tasks and are paid hourly and on a bi-weekly basis with the possible exception of Store Managers.

17. Sherwin-Williams also operates warehouse locations that employ Warehouse Managers, Lead Warehousers, and other employees with yet-to-be determined titles, and cater to commercial clients ordering large volumes of paint as well as distribute paint to retail stores. Employees at Sherwin-Williams warehouse locations perform almost entirely physical tasks, including unloading trucks, stocking warehouse shelves with forklifts and pallet jackets, and mixing large volumes of paint to meet orders from commercial customers such as contractors and property managers. All Sherwin-Williams' warehouse employees are paid hourly on a bi-weekly basis with the possible exception of General and District Managers.

18. Plaintiff George Alvaran started working for Sherwin-Williams as a Customer

Service Associate at one of their retail stores at 303 NY-211, Middletown, New York 10940 in October 2013 until October 2021. At the time of the transfer he was paid approximately $17 per hour. In 2019, he was paid $12.24, and he was paid lower than that as well throughout the employment. A more precise statement of the rates of pay will be provided by Plaintiff after receipt of the wage-and-hour records in this case.

19. In October 2021, Plaintiff transferred to work as a Warehouse Manager at one of Defendant's warehouses located in Manhattan at 619 West 46th Street, New York, New York 10036 until the end of his employment on July 25, 2022.

20. As a Warehouse Manager, Plaintiff worked 40 hours per week while being paid $21.73 per hour on a bi-weekly basis.

21. Defendant typically scheduled Plaintiff to begin working at 4 am Monday - Friday, but Plaintiff worked as late as 4 pm or 5 pm the next day as needed. On days when Defendant's warehouse was receiving delivery trucks, Plaintiff typically worked to unload trucks until all of his work was finished, working 12 hour shifts on those days.

22. Defendant discouraged employees from working more than 40 hours per week and having to pay overtime, so Plaintiff routinely finished his 40 hours per week in just four days.

23. Despite regularly working 12 hour shifts, Defendant never paid Plaintiff the required spread of hours pay for days when he worked more than ten hours at a time.

24. As a Customer Service Associate, Plaintiff's job duties included operating a cash register, interacting with customers, taking paint orders, mixing paint, lifting and stocking gallons of paint, and general cleaning tasks.

25. As a Warehouse Manager, Plaintiff's job duties included receiving and unloading trucks, operating a forklift and pallet jack to move and stock pallets of paint, mixing

large volumes of paint, and performing general cleaning tasks.

26. Plaintiff's job duties in both roles included such physical tasks as: (1) mixing paint; (2) lifting, pouring, and stocking buckets of paint; (3) unloading pallets of paint from trucks; (4) operating a forklift and pallet jack to move pallets of paint; (5) stocking warehouse shelves; and (6) general cleaning tasks.

27. In each of these roles, Plaintiff spent at least 25% of the time performing physical tasks that qualify him as a Manual Worker as that term is used in Section 190(4) of the New York Labor Law.

28. At all times, Plaintiff was required to wear a polo shirt with the company logo. The company provided approximately 2 shirts per year, free of charge. Plaintiff requested additional shirts, but the requests went either unfulfilled or were fulfilled after significant period of time, up to one year at times.

## RULE 23 CLASS ACTION ALLEGATIONS

29. The Proposed Class is defined as:

> All hourly employees working in Sherwin-Williams warehouses and retail stores in the State of New York between the date six years preceding the filing of this complaint and the date a class is certified in this action.

30. The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

31. There are more than 200 members and Plaintiff's claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

32. Plaintiff and the Proposed Class have all been injured in that they have been

uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct.

33. Defendant's corporate-wide policies and practices affected everyone who worked in every store in the same way.

34. Plaintiff is able to fairly and adequately protect the interests of the Proposed Class and has no interests antagonistic to it.

35. Plaintiff is represented by attorneys who are experienced and competent to bring this action.

36. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

37. Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

    a. What job duties are performed by Sherwin-Williams Customer Service Associates, Sales Associates, Lead Warehousers, Warehouse Managers, and other hourly employees in retail store and warehouse locations?

    b. At what frequency did Defendants pay Sherwin-Williams Customer Service Associates, Sales Associates, Lead Warehousers, Warehouse Managers, and other hourly employees in retail store and warehouse locations?

    c. What uniform were Sherwin-Williams Customer Service Associates, Sales Associates, Lead Warehousers, Warehouse Managers, and other hourly employees in retail store and warehouse locations required to wear?

    d. How many work shifts in excess of ten hours per day were worked by Sherwin-Williams Customer Service Associates, Sales Associates, Lead Warehousers, Warehouse Managers, and other hourly employees in retail store and warehouse locations?

    e. What was the rate of pay for Sherwin-Williams Customer Service Associates, Sales Associates, Lead Warehousers, Warehouse Managers, and other hourly employees in retail store and warehouse locations?

## AS AND FOR A FIRST CAUSE OF ACTION

**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiffs and Proposed Class)**

38. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiff and the Proposed Class.

39. Defendant failed to pay Plaintiff Alvaran and the Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

40. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." People v. Vetri, 309 N.Y. 401, 405 (1955).

41. All of Sherwin-Williams' store-based employees except Store Managers are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

42. All of Sherwin-Williams' warehouse-based employees except General and District Managers are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

43. As such, the failure to provide wages owed to Plaintiff Alvaran and all other similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." See Caul v. Petco Animal Supplies, Inc., No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing Vega v. CM & Associates. Contr. Mgmt., LLC, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

44. Defendant's conduct also constitutes an "injury in fact" suffered by Plaintiffs under Article III that is within the federal judicial power because Plaintiffs have "suffered an injury in fact that is concrete, particularized, and actual or imminent." See Caul v. Petco (infra).

45. Due to Defendant's violations of the NYLL, Plaintiff Alvaran and the New York Class are entitled to recover from Defendant the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## AS AND FOR A SECOND CAUSE OF ACTION

**New York Labor Law - Failure to Pay Spread-of-Hours Premium**
**(Brought on behalf of Plaintiff Alvaran)**

46. Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

47. Defendant employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

48. Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours. New York State Department of Labor Regulations § 142-2.4.

49. Defendant knowingly and willfully violated the rights of the Plaintiff by failing

to pay "spread of hours" premium to Plaintiff for each day they worked in excess of ten (10) hours pursuant to New York State Department of Labor Regulations.

50. Due to the Defendant's New York Labor Law violations, Plaintiff is entitled to recover from Defendant the difference between his actual wages and the amounts that were owed under the New York Labor law. The deficiency accounts for minimum wage for all straight time hours, overtime compensation for all overtime hours, "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law§§ 663(1), 198.

51. The Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law§ 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## AS AND FOR A THIRD CAUSE OF ACTION

*New York Labor Law – Unpaid Wages as Unreimbursed Uniform Maintenance Costs*

52. Plaintiffs allege and re-allege all of the other paragraphs contained herein.

53. Defendants did not launder Plaintiffs or the Class's required uniforms, nor did Defendants offer to launder them.

54. Plaintiffs and the Class's uniforms were issued by Defendants for the expressed benefit of Defendants and it was a condition of their employment to wear them during each shift.

55. Defendants never paid to Plaintiffs or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

56. Plaintiffs and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendants required.

57. The hourly rate paid by Defendants to Plaintiffs and the Class were either the applicable minimum wage, or a rate that although above the minimum wage was effectively below the minimum wage when calculating the unpaid uniform maintenance pay.

58. Upon information and belief, the cost of Plaintiffs' uniforms were deducted from Plaintiffs wages.

59. In any event, Plaintiffs not only bring this claim for the cost of the uniforms but also the cost of maintaining the uniforms.

60. Defendants' conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order for Miscellaneous Industries and Occupations.

## AS AND FOR A FOURTH CAUSE OF ACTION

### NYLL - Annual Wage Notice and Periodic Wage Statements

61. Plaintiffs reallege and reaver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

62. Defendants have willfully failed to supply Plaintiffs with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

63. Through Defendants' knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

64. Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

65. Through Defendants' knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

66. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiffs with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

67. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure

B. Designation of Plaintiff Alvaran as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

C. Compensatory damages in an amount to be determined at trial;

D. Unpaid spread of hours pay;

E. Unpaid uniform maintenance pay;

F. Liquidated damages permitted by law pursuant to the NYLL;

G. Statutory Penalties for failure to provide wages notices and wage statements;

H. Prejudgment and post-judgment interest;

I. Reasonable attorneys' fees and costs of the action; and

J. Such other relief as this Court shall deem just and proper.

**JURY DEMAND**

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.

Dated: New York, New York
August 9, 2022

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____
Mohammed Gangat, Esq.
675 Third Avenue
Suite 1810
(718) 669-0714
mgangat@gangatllc.com
*Attorneys for Plaintiff and Rule 23 Proposed Class*